JS-6

1  ROB BONTA
Attorney General of California
2  SARAH E. MORRISON
Supervising Deputy Attorney General
3  DONALD A. ROBINSON, State Bar No. 72042
Deputy Attorney General
4   300 South Spring Street
Los Angeles, CA 90013
5   Telephone: (310) 634-2313
Fax: (213) 736-2802
6   E-mail: Donald.Robinson@doj.ca.gov

7  *Attorneys for Plaintiffs Department oft Toxic
Substances Control and the Toxic Substances*
8  *Control Account*

9

10                 IN THE UNITED STATES DISTRICT COURT

11              FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13  **CALIFORNIA DEPARTMENT OF**        Case No. CV-23-05054 PA (SKx)
    **TOXIC SUBSTANCES CONTROL**
14  **and CALIFORNIA TOXIC**
    **SUBSTANCES CONTROL**            CONSENT DECREE BETWEEN
15  **ACCOUNT,**                      PLAINTIFFS AND DEFENDANTS
                                      MYUNG FAMILY PARTNERSHIP
16                       Plaintiffs,  NO. 1, L.P.. and JUNG S. MYUNG

17        v.

18  **MYUNG FAMILY PARTNERSHIP**
19  **NO. 1, LP.; JUNG S. MYUNG,**

20                       Defendants.

21

22  **I.    INTRODUCTION**

23        1.   Concurrently with the lodging of this Consent Decree, Plaintiffs the State

24  of California Department of Toxic Substances Control ("DTSC") and the Toxic

25  Substances Control Account (collectively, "Plaintiffs") are filing a complaint in this

26  matter pursuant to the Comprehensive Environmental Response, Compensation,

27  and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. ("Complaint") against

28  Defendants the Myung Family Partnership No. 1, L.P. ("Myung Partnership"), and

Jung S. Myung (hereinafter collectively "Defendants"). In the Complaint, Plaintiffs seek to recover costs they incurred responding to releases and/or threatened releases of hazardous substances at or from the properties located at 4600 Firestone Boulevard, South Gate, California 90280 ("Green's Cleaners Site") and the South Region Elementary School No. 4 ("SRES #4 Property"), owned by the Los Angeles Unified School District ("LAUSD") and located at 8929 Kauffman Avenue, South Gate, California 90280. Plaintiffs also seek a declaratory judgment under CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2), that each Defendant is jointly and severally liable to Plaintiffs for the response costs Plaintiffs have incurred, and for any further response costs Plaintiffs incur in the future as a result of any release or threatened release of a hazardous substance at the Green's Cleaners Site and the SRES #4 Property.

2.   In the Complaint, Plaintiffs allege, in relevant part, the following:

     a.   The Green's Cleaners Site and the SRES #4 Property are located in South Gate, California.

     b.   The Green's Cleaners Site is approximately 0.162 acres and is identified as Los Angeles County Assessor's Parcel No. 6216-016-026.

     c.   Defendant Myung Partnership, a California Limited Partnership, has been doing business at the Green's Cleaners Site since approximately September 1997, and currently owns the Green's Cleaners Site.

     d.   Defendant Jung S. Myung purchased the Green's Cleaners Site on or about October 30, 1978, and, on or about October 10, 1997, transferred ownership of the Green's Cleaners Site to Defendants Myung Partnership by grant deed.

e.  Defendant Jung S. Myung has operated or been involved in the operation of Green's Cleaners at the Green's Cleaners Site since at least 1978.

f.  The SRES #4 Property is an elementary school owned by LAUSD and located at 8929 Kauffman Avenue, South Gate. SRES #4 Property is currently known as Azalea Academies.

g.  The SRES #4 Property is approximately sixty (60) feet west of the Green's Cleaners Site.

h.  Elevated levels of volatile organic compounds (VOCs), including trichloroethylene (TCE) and perchloroethylene (PCE), both hazardous substances under CERCLA, have been detected in the soil, soil vapor, and groundwater at the Green's Cleaners Site and the SRES #4 Property.

i.  PCE has historically been used in dry cleaning operations, and Green's Cleaners has been identified by DTSC as an active generator of hazardous wastes such as PCE.

j.  Other hazardous substances, including without limitation, cis-1,2-dichloroethene and vinyl chloride, have been detected in the soil, soil vapor, and groundwater at and in the vicinity of the Green's Cleaners Site.

k.  Beginning on or about February 4, 1982, the South Coast Air Quality Management District ("SCAQMD") issued several permits to Green's Cleaners for the use of PCE. Records compiled by the SCAQMD indicated that there were at least four air quality violations by Green's Cleaners, one of which included an unauthorized release of PCE from a drycleaning machine at the Green's Cleaners Site.

[Proposed] Consent Decree
(Case No. CV-23-05054 PA (SKx))

l.  In 2005, LAUSD conducted a Preliminary Endangerment Assessment at the SRES #4 Property. During the Preliminary Endangerment Assessment, elevated levels of VOCs, primarily PCE, were detected in soil gas and soil at the northeastern portion of the SRES #4 Property.

m.  On September 4, 2007, DTSC and LAUSD entered into a School Cleanup Agreement pursuant to California Health and Safety Code Sections 25355.5 and 25358.3 and California Education Code Section 17213.2. The purpose of the School Cleanup Agreement was to characterize the PCE in the soil and soil gas at the SRES #4 Property.

n.  In 2007 and 2008, LAUSD conducted Supplemental Site Investigations to delineate the extent of PCE contamination in the northeastern portions of the SRES #4 Property.

o.  Based on these investigations it was determined that the elevated levels of TCE and PCE resulted from Defendants' drycleaning operations at the Green's Cleaners Site.

p.  The Agency for Toxic Substances and Disease Registry has found that long term (i.e., chronic) exposure to PCE may cause adverse effects to the nervous system, kidney, liver, and immune and/or hematologic systems depending on the concentration and length of exposure. Certain types of cancers may also be caused by long term exposure to PCE. PCE is listed as a carcinogen under California's Proposition 65.

q.  The most likely primary route of exposure to PCE in the vicinity of the Site is the inhalation of vapors from PCE in the soil. This route of exposure would occur by inhaling PCE in soil vapor via intrusion into the indoor air from subsurface soil.

r.  TCE also represents a threat to human health through ingestion, inhalation, and dermal contact exposure pathways. TCE can adversely affect the kidneys, liver, eyes, skin, central nervous system, and cardiovascular system. It can also cause skin and eye irritation, headaches, dizziness, tremors, drowsiness, nausea, vomiting, and liver injury. TCE is also a potential male reproductive toxin.

s.  On December 22, 2015, DTSC issued Remedial Action Order No. HSA-FY15/16-072 to Defendant Myung Partnership, ordering that it investigate and remediate hazardous substance contamination at and adjacent to the Green's Cleaners Site.

t.  Since the issuance of the Remedial Action Order, Defendants have been conducting remedial investigation activities at, and in the vicinity of, the Green's Cleaners Site and the SRES #4 Property, including, but not limited to, soil assessment, soil vapor monitoring, installation and monitoring of groundwater monitoring wells, air sparging, and soil vapor extraction pilot studies.

u.  In May 2015, LAUSD filed an environmental cost recovery action in the United States District Court for the Central District of California against Defendants, seeking recovery of damages, as well as past and future costs allegedly incurred by LAUSD in response to the purported PCE and TCE contamination allegedly caused by the drycleaning operations conducted by Defendants. *Los Angeles Unified School District v. Myung Family Partnership, et al.*, Case No. CV-15-03832-CAS.

v.  In 2016, Defendants and LAUSD settled LAUSD's cost recovery action pursuant to an "Interim Mutual Release and Settlement

[Proposed] Consent Decree
(Case No. CV-23-05054 PA (SKx))

Agreement." The settlement amount paid by Defendants to LAUSD was funded by Insurance Company of the West (ICW) and Farmers Insurance Exchange (Farmers), both of whom had issued general liability policies to Myung Partnership No. 1 LP. ICW paid $500,000, and Farmers paid $33,000 to LAUSD, on Defendants' behalf to settle the LAUSD cost recovery action.

3.  DTSC has taken response actions necessary to investigate, remove and/or remedy the hazardous substances released and/or threatened to be released at the Green's Cleaners Site and the SRES #4 Property.  DTSC's response actions included, but were not limited to, the following activities: investigation of contamination at the Green's Cleaners Site and the SRES #4 Property; enforcement/cost recovery activities; and oversight of response actions taken by Defendants and their contractors.

4.  DTSC's response actions were not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

5.  As of July 15, 2022, DTSC's unreimbursed costs for investigation and other response actions related to the Green's Cleaners Site and the SRES #4 Property are in excess of $380,000.

6.  DTSC will continue to incur future response costs to address contamination at the Green's Cleaners Site and the SRES #4 Property.

7.  Defendants have claimed an inability to pay DTSC's unreimbursed and future response costs related to cleanup of the Green's Cleaners Site and the SRES #4 Property and have submitted financial information in support of this claim to DTSC. Defendants affirm, under penalty of perjury, that the financial information provided to DTSC is true and correct.

8.  DTSC reviewed the financial information submitted by Defendants and has relied on this information in entering into this Consent Decree. DTSC and Defendants agree that settlement without prolonged litigation or admission of any

[Proposed] Consent Decree
(Case No. CV-23-05054 PA (SKx))

issue of fact or law is the most appropriate means of resolving DTSC's response costs related to contamination of the Green's Cleaners Site and the SRES #4 Property. In making this determination of Defendants' financial viability and in entering into this settlement, DTSC has relied on the financial information provided by Defendants.

9.   Plaintiffs and Defendants (collectively, the "Parties") agree, and this Court, by entering this Consent Decree, finds, that: this Consent Decree has been negotiated by the Parties in good faith; that settlement of this matter will avoid expensive, prolonged, and complicated litigation between the Parties; and that this Consent Decree is fair, reasonable, in the public interest, and consistent with the purpose of CERCLA.

**THEREFORE**, the Court, with the consent of the Parties to this Consent Decree, hereby **ORDERS, ADJUDGES, AND DECREES**, as follows:

## II.   JURISDICTION

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and § 113(b) of CERCLA, 42 U.S.C. § 9613(b). The Court has personal jurisdiction over each of the parties to this Consent Decree. Venue is proper in this district under 28 U.S.C. § 1391(b) and § 113(b) of CERCLA, 42 U.S.C. § 9613(b).

11. Solely for the purposes of this Consent Decree and the underlying Complaint, Defendants waive all objections and defenses that Defendants may have to the jurisdiction of the Court or to venue in this district. Defendants consent to, and shall not challenge, the terms of this Consent Decree and this Court's jurisdiction to enter and enforce this Consent Decree.

12. The Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree, if necessary.

[Proposed] Consent Decree
(Case No. CV-23-05054 PA (SKx))

1

## III. SETTLEMENT OF DISPUTED CLAIMS

2

3       13. This Consent Decree resolves Plaintiffs' claims against Defendants in the

4  Complaint. Plaintiffs agree to settlement of Defendants' liability in this action in

5  exchange for consideration from Defendants, including payment by Defendants to

6  reimburse a portion of Plaintiffs' Response Costs incurred and to be incurred at, or

7  in connection with, releases and threatened releases of hazardous substances at the

8  Green's Cleaners Site and at SRES #4 Property. The Parties' mutual releases of

9  liability and the consideration for those releases are set forth herein in detail below.

10      14. Nothing in this Consent Decree shall be construed as an admission by

11 Defendants of any issue of law or fact or of any violation of law. Except as

12 otherwise provided by this Consent Decree, this Consent Decree shall not prejudice,

13 waive, or impair any right, remedy, or defense that Defendants may have in any

14 other or further legal proceeding.

15      15. Upon approval and entry of this Consent Decree by the Court, this

16 Consent Decree shall constitute a final judgment between the Parties.

17

## IV. DEFINITIONS

18

19      16. Unless otherwise expressly provided herein, terms used in this Consent

20 Decree that are defined in CERCLA, or in regulations promulgated under CERCLA

21 shall have the meaning assigned to them therein. Whenever terms listed below are

22 used in this Consent Decree, the definitions below shall apply.

23      17. "DTSC" or "Department" shall mean the California Department of Toxic

24 Substances Control, and its predecessor and successor agencies. DTSC is a public

25 agency of the State of California organized and existing under and pursuant to

26 California Health and Safety Code § 58000 *et seq*. Under California law, DTSC is

27 the state agency responsible for determining whether there has been a release and/or

28 threatened release of hazardous substances into the environment, and for

[Proposed] Consent Decree
(Case No. CV-23-05054 PA (SKx))

determining the actions to be taken in response thereto. DTSC is the California state agency with primary jurisdiction over the response to the release and threatened release of hazardous substances at, in, or from the Site. For the purposes of access to the Site or the Property, DTSC's right of access to the Site shall include any contractors or subcontractors or other persons doing response work for or on behalf of DTSC.

18. "Effective Date" shall mean the day on which the Court enters an order approving this Consent Decree.

19. "Parties" shall mean DTSC, the Toxic Substances Control Account, and Defendants.

20. "Response Costs" shall mean all costs of "removal," "remedial action," or "response" as those terms are defined by section 101 of CERCLA, 42 U.S.C. § 9601, related to release and/or threatened release of hazardous substances at, beneath, and/or from the Site and SRES #4, including in the soils, air, and groundwater. Response Costs include, but are not limited to, direct labor costs; contractor, consultant, and expert costs; travel and any other out-of-pocket expenses; the costs of identifying, developing evidence against, and pursuing claims against persons or entities liable for the release or threatened release of hazardous substances at, in, or from the Site; indirect costs; oversight costs; applicable interest charges; and attorneys' fees incurred by DTSC.

21. "Defendants" shall collectively include the Myung Family Partnership No. 1, L.P. and Jung S. Myung.

22. "Myung Family Partnership" shall mean the Myung Family Partnership No. 1, L.P. and any other persons acting or purporting to act on its behalf including, but not limited to, your past or present agents, officers, partners, director's employees, trustees, representatives, accountants, consultants, contractors, subsidiaries, predecessors, successors and assignees and subsidiary and parent corporations.

1    23. Defendant Jung S. Myung refers to the individual Defendant, Jung S.

2    Myung, who is a principal partner in the Myung Family Partnership.

3    24. "Toxic Substances Control Account" shall mean the Toxic Substances

4    Control Account, which is an account within the State of California General Fund.

5    Cal. Health & Saf. Code §§ 25173.6, 25324. The Director of the Department

6    administers the State Toxic Substances Control Account. The State Toxic

7    Substances Control Account may sue in its own name (Cal. Health & Saf. Code, §

8    25331), and shall be a party in any action for recovery of costs or expenditures

9    incurred from the state account.

10

11   **V.    SETTLING DEFENDANTS' OBLIGATIONS**

12   25. <u>Settlement Payment</u>. Within forty-five (45) days of the approval and

13   entry of this Consent Decree by the Court, Defendants shall pay Plaintiffs the total

14   sum of $517,000 ("Settlement Amount").

15   26. Defendants' payment obligations under this Consent Decree shall be

16   deemed to have been satisfied in full upon delivery to DTSC of the payments due in

17   accordance with the provisions in Paragraph 25 of this Consent Decree.

18   27. The payment specified in Paragraph 25 shall be made by certified or

19   cashier's check payable to the California Department of Toxic Substance Control in

20   accordance with the instructions set forth in https://dtsc.ca.gov/make-a-payment/

21   and shall bear on its face the court's case number for this proceeding. For payments

22   made via check or money order, a photocopy of all payments shall also be sent to

23   Ahmad Bajouk, Administrative Project Manager, Brownfields and Environmental

24   Restoration Program, Department of Toxic Substances Control, 5796 Corporate

25   Avenue, Cypress, CA 90630. A copy of the check or money order shall also be

26   / / / / /

27   / / / / /

28   / / / / /

mailed to:

Doyle Graham
Staff Counsel
Department of Toxic Substances Control
Office of Legal Counsel, MS-23A
1001 I Street
Sacramento, CA 95814,

and e-mailed to Doyle.Graham@dtsc.ca.gov in PDF format.

Donald Robinson, Deputy Attorney General
California Department of Justice
300 South Spring Street, 11-North
Los Angeles, CA 90013

and emailed to Donald.Robinson@doj.ca.gov in PDF format.

28. This Consent Decree is conditioned upon full execution of the Defendants' obligations in Paragraph 25.

29. No Interest or Pre-Payment Penalties. There shall be no interest accrued on the Settlement Amount. In addition, Defendants shall have the right to prepay all or any part of the Settlement Amount at any time prior to it being due, pursuant to the payment schedule in Paragraph 25, with no prepayment penalty.

30. No Lien. In consideration of the terms agreed upon herein, the Parties hereby agree that no lien shall be recorded against the Green's Cleaners Site   by DTSC to secure all or any part of DTSC's Response Costs incurred relating to the Green's Cleaners Site or the SRES #4 Property through July 15, 2022, and at any time after the Effective Date of this Consent Decree, and further agree that DTSC will not take any action to impose such lien against the Green's Cleaners Site.

31. Cessation of Work under the Remedial Action Order. Defendants have ceased work under the Remedial Action Order and shall not be responsible for any Response Costs incurred by DTSC during the pendency of this action prior to the Effective Date of this Consent Decree.  Defendants have represented to DTSC that when the Settlement Amount is paid to DTSC, Defendants will not be able to fund any future remedial investigation at the Green's Cleaners Site and the SRES #4

[Proposed] Consent Decree
(Case No. CV-23-05054 PA (SKx))

Property, as Defendants' insurance funding source will at that point be exhausted. Defendants covenant that they shall cooperate with DTSC's efforts to secure any additional funding for Response Costs related to the Green's Cleaners Site, whether that funding source is secured through a State or Federal grant or otherwise.

32. <u>Land Use Covenant.</u> Pursuant to California Code of Regulations, title 22, section 67391.1, Defendant Myung Partnership shall sign and record a Land Use Covenant in a form provided by DTSC restricting the use of the Green's Cleaners Site in accordance with, and within 90 days of, DTSC's request. Defendant Myung Partnership and all subsequent owners of the Green's Cleaners Site must comply with the Land Use Covenant during their respective periods of ownership, as required under California law.

## VI.  SETTLING PLAINTIFFS' OBLIGATIONS

33.  <u>Issuance of the NFA letter to LAUSD regarding Investigation and Remediation of SRES #4 Property.</u> Within thirty (30) days of the effective date of this Consent Decree, DTSC shall rescind the O&M agreement with LAUSD as to the SRES #4 Property and issue a No Further Action ("NFA") letter to LAUSD concerning the termination of any and all obligation(s) of LAUSD to investigate and/or remediate the SRES #4 Property.

## VII.  ACCESS TO INFORMATION AND THE PROPERTY

34. Defendant Myung Partnership shall provide DTSC full access to the Green's Cleaners Site and fully cooperate with DTSC for response activities, including, but not limited to, implementation of the remedial actions and ongoing operation and maintenance activities. Any sale of the Green's Cleaners Site by Myung Partnership shall include a requirement that all purchasers of the Green's Cleaners Site shall provide DTSC full access to the Green's Cleaners Site and fully cooperate with DTSC for response activities, including, but not limited to,

implementation of the remedial actions and ongoing operation and maintenance activities.

## VIII.   COVENANT NOT TO SUE BY PLAINTIFFS

35. <u>Covenant Not to Sue by DTSC</u>. Except as provided in Section IX (Reservation of Rights) DTSC covenants not to sue Defendants to recover either past, current or future Response Costs related to the Green's Cleaners Site and the SRES #4 Property incurred or to be incurred by DTSC. This Covenant Not to Sue shall take effect on the Effective Date and shall remain in effect so long as Defendants are in substantial compliance with their obligations under this Consent Decree.

36. This Covenant Not to Sue is that of Plaintiffs only and nothing in this Consent Decree is intended to, or shall, affect the rights of any other agency, board, department, or other entity of the State of California.

## IX.  PLAINTIFFS' RESERVATION OF RIGHTS

37. This Consent Decree is conditioned upon the complete and satisfactory performance by Defendants of all obligations under this Consent Decree. Failure to provide timely payment in accordance with the terms of this Consent Decree may constitute a material breach of this Consent Decree. This Consent Decree is also conditioned upon Defendants' certification that the financial information provided to and relied upon by DTSC in entering into this Consent Decree is true and correct. If Defendants fail to comply with the terms of this Consent Decree, or if the financial information or certification provided by Defendants as described in Paragraphs  7 and 8 of this Consent Decree is false or, in any material respect, inaccurate, DTSC may, in addition to other available remedies or sanctions, pursue Defendants for all amounts incurred or to be incurred by DTSC related to the SRES #4 Property and the Green's Cleaners Site, including interest. DTSC will give

[Proposed] Consent Decree
(Case No. CV-23-05054 PA (SKx))

1   Defendants reasonable notice and a reasonable opportunity to cure before pursuing

2   any remedies or sanctions pursuant to this Section.

3       38. DTSC reserves, and this Agreement is without prejudice to, all rights

4   against Defendants with respect to liability resulting from: (1) Defendants'

5   introduction of any hazardous substance, pollutant, or contaminant to the SRES #4

6   Property and the Green's Cleaners Site after the Effective Date of this Agreement;

7   (2) overt acts by Defendants after the Effective Date that cause and/or exacerbate

8   the  hazardous substance conditions existing at or from the SRES #4 Property or the

9   Green's Cleaners Site ; or (3) claims based on Defendants' liability arising from the

10  past, present, or future disposal of hazardous substances at sites or locations other

11  than the SRES #4 Property and the Green's Cleaners Site.

12

13  **X.  COVENANT NOT TO SUE BY SETTLING DEFENDANTS**

14      39. <u>Covenant Not to Sue by Defendants</u>. Defendants covenant not to sue, and

15  agree not to assert any claims or causes of action against DTSC or its contractors or

16  employees, for: (1) any costs or damages Defendants might suffer as a result of the

17  response actions undertaken by DTSC or its contractors; (2) any and all civil

18  liability for reimbursement of all or a portion of Defendants' past or future

19  Response Costs, declaratory relief, injunctive relief, or any other relief under

20  CERCLA or state law for liability with regard to releases or threatened releases of

21  hazardous substances at, in, or from the Green's Cleaners Site  or the SRES #4

22  Property; and (3) any and all civil liability, costs, or damages, related to DTSC's

23  oversight of the response actions or review of construction documents.

24  / / / / /

25  / / / / /

26  / / / / /

27  / / / / /

28  / / / / /

[Proposed] Consent Decree
(Case No. CV-23-05054 PA (SKx))

## XI. NOTIFICATION

40. Notification to or communication among the Parties as required or provided for in this Consent Decree shall be addressed as follows:

For Plaintiffs:

Scarlett Zhai
Project Manager
California Department of Toxic Substances Control
Cypress Regional Office
5796 Corporate Avenue
Cypress, CA 90630
Scarlett.Zhai@dtsc.ca.gov

Doyle Graham
Staff Counsel
California Department of Toxic Substances Control
Office of Legal Counsel, MS-23A
1001 I Street
Sacramento, CA 95814
Doyle.Graham@dtsc.ca.gov

Donald Robinson
Deputy Attorney General
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
Donald.Robinson@doj.ca.gov

For Defendants Jung S. Myung and Defendant Myung Family Partnership No. 1, LP:

Murray M. Sinclair
Murray M. Sinclair & Associates
2029 Century Park East, Suite 400
Los Angeles, CA 90067

murray@murraysinclairlaw.com

## XII. GENERAL PROVISIONS

41. Compliance with Applicable Laws. Nothing in this Consent Decree shall relieve Defendants from complying with all other applicable laws and regulations, including, but not limited to, compliance with all applicable waste discharge

1   requirements issued by the State Water Resources Control Board or a California

2   Regional Water Quality Control Board. Defendants shall ensure all actions required

3   by this Consent Decree conform to all applicable federal, state, and local laws and

4   regulations.

5       42. <u>Defendants' Liabilities</u>. Except as expressly provided for in this Consent

6   Decree, nothing in this Consent Decree shall constitute or be construed as a

7   satisfaction or release from liability for any conditions or claims arising as a result

8   of past, current, or future operations of Defendants. Nothing in this Consent Decree

9   is intended or shall be construed to limit the rights of any of the Parties with respect

10  to claims arising out of or relating to the deposit or disposal at any other location of

11  substances removed from the Site. Nothing in this Consent Decree is intended or

12  shall be construed to limit or preclude DTSC from taking any action authorized by

13  law to protect public health or safety or the environment and recovering the cost

14  thereof from a liable party other than Defendants. Notwithstanding compliance with

15  the terms of this Agreement, Defendants may be required to take further actions as

16  are reasonably necessary to protect public health and the environment. such as those

17  actions described in Paragraphs 32 and 34 above.

18      43. <u>Parties Bound.</u> This Consent Decree applies to and is binding upon

19  Defendants and each of its respective officers, directors, agents, employees,

20  contractors, consultants, receives, trustees, successors, and assignees, including, but

21  not limited to, individuals, partners, and subsidiary and parent corporations.

22      44. <u>Third Party Beneficiaries.</u> Except as provided in Paragraph 43 regarding

23  Parties Bound, nothing in this Consent Decree shall be construed to create any

24  rights in, or grant any cause of action to, any person not a Party to this Consent

25  Decree.

26      45. <u>Termination and Satisfaction</u>. Except for Defendants' obligations under

27  Paragraphs 32 and 34, Defendants' obligations under this Consent Decree shall

28

[Proposed] Consent Decree
(Case No. CV-23-05054 PA (SKx))

terminate and be deemed satisfied upon Defendants' receipt of written notice from DTSC that Defendants have complied with all the terms of this Consent Decree.

46. <u>Contribution Protection</u>. The Parties agree that this Consent Decree constitutes a judicially approved settlement for purposes of CERCLA Section 113(f)(2), 42 U.S.C. 9613(f)(2), for matters addressed in this Consent Decree. Accordingly, on and after the Effective Date of this Consent Decree, Defendants shall be entitled to protection against all claims for contribution, pursuant to CERCLA Sections 113(f)(2) and 113(f)(3)(B), 42 U.S.C. 9613(f)(2), 9613 (f)(3)(B), for the "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken at the Green's Cleaners Site and the SRES #4 Property. The contribution protection provided in this Section is conditioned upon Defendants' substantial compliance with their obligations under this Consent Decree and public notice of the Consent Decree pursuant to Paragraph 60, below. Nothing in this Consent Decree diminishes the right of DTSC to pursue any other person for Response Costs incurred by DTSC and to enter into settlements that give rise to contribution protection for those persons.

47. <u>Change of Ownership</u>. No change in ownership or corporate or partnership status related to the Green's Cleaners Site shall in any way alter Defendants' responsibilities under this Consent Decree. No conveyance of title, easement, or other interest in the Green's Cleaners Site, or a portion of the Green's Cleaners Site, shall affect Defendants' obligations under this Consent Decree. Defendants shall be responsible for and liable for any failure to carry out all activities required of Defendants by the terms and conditions of this Consent Decree, regardless of Defendants' use of employees, agents, contractors, or consultants to perform any such tasks. Defendants shall provide a copy of this Consent Decree to any subsequent property owners or successors before ownership rights or stock or assets in a corporate acquisition are transferred.

[Proposed] Consent Decree
(Case No. CV-23-05054 PA (SKx))

48. <u>No Waiver of Enforcement.</u> Plaintiffs' non-enforcement of any provision of this Consent Decree shall in no way be deemed a waiver of such provision or in any way affect the validity of this Consent Decree.  Plaintiffs' non-enforcement of any such provision shall not preclude it from later enforcing the same or any other provision of this Consent Decree.

49. <u>No Findings by Plaintiffs.</u> The statements of fact set forth in this Consent Decree are not intended to constitute a finding by Plaintiffs as to the risks to human health or the environment that may be posed by contamination at either  SRES #4 Property or the Green's Cleaners Site  or whether or not a nuisance condition exists at the SRES #4 Property and/or the Green's Cleaners Site This Consent Decree does not constitute a representation by Plaintiffs that the SRES #4 Property or the Green's Cleaners Site  or any part thereof, is fit for any particular purpose.

50. <u>Governmental Immunity.</u> Nothing herein is intended, nor shall be construed, to limit, impair, or prejudice the governmental tort, statutory, or sovereign immunities available to Plaintiffs under applicable law for their response actions, oversight or other activities with respect to the SRES #4 Property and the Green's Cleaners Site.

51. <u>Severability</u>. The provisions of this Consent Decree are severable, and a determination that any provision is invalid or unenforceable shall not affect the validity and enforceability of the remaining provisions.

52. <u>Integration.</u> This Consent Decree, including the exhibits and other materials incorporated herein by reference, constitutes the entire agreement between Plaintiffs and Defendants and may not be amended or supplemented except as provided for in this Consent Decree.

53. <u>Modifications.</u> This Consent Decree may only be modified upon the written agreement of Plaintiffs and Defendants and the approval of the Court, or upon order of the Court after noticed motion by a Party to this Consent Decree.

[Proposed] Consent Decree
(Case No. CV-23-05054 PA (SKx))

54. <u>Interpretation.</u> The Consent Decree is entered into and shall be construed and interpreted in accordance with the laws of the State of California and, where applicable, the laws of the United States. This Consent Decree shall be deemed to have been drafted equally by all Parties hereto.

55. <u>Time Periods</u>. Unless otherwise specified, "days' means calendar days.

56. <u>Signatories.</u> Each signatory to this Consent Decree certifies that he or she is fully authorized by the Party he or she represents to agree to the terms and conditions of this Consent Decree, to execute it on behalf of the Party represented, and to legally bind that Party to all the terms and conditions of this Consent Decree.

57. <u>Counterparts.</u> This Consent Decree may be executed in two or more counterparts by the Parties, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

58. <u>Attorneys' Fees and Costs.</u> Each Party to this Consent Decree shall bear its own costs, attorneys' fees, expert witness fees, and all other costs of litigation; provided, however, that if  any Party to this Consent Decree brings an action against the other to enforce this Consent Decree, and is successful in such action, the prevailing party(ies) shall be reimbursed by the party(ies) who caused such enforcement action to be filed for all costs of such action, including, but not limited to, attorneys' fees. This paragraph shall have no effect on the Parties' right to recover these fees or costs from any third person not a party to this Consent Decree.

59. <u>Effective Date.</u> The Effective Date of this Consent Decree shall be the date on which the Court enters an order approving this Consent Decree.

## XIII.  ENTRY OF THE CONSENT DECREE

60. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days. DTSC may modify or withdraw its consent to this Consent Decree if comments received during the public comment period disclose facts or considerations that indicate that this Consent Decree is inappropriate,

1    improper, or inadequate. Should DTSC withdraw its consent to this Consent Decree
2    the Parties shall be released from their obligations under the Consent Decree. The
3    Parties would then be free to negotiate a new agreement. This Consent Decree may
4    not be used as evidence in any litigation between the parties should DTSC
5    withdraw its consent to this Consent Decree. Any modifications to the Consent
6    Decree proposed by DTSC shall be effective only if agreed to in writing by
7    Defendants. Any new agreement will be subject to an additional public comment
8    period of not less than thirty (30) days. Any modified Consent Decree may also be
9    subject to, at DTSC's discretion, an additional public comment period of not less
10   than thirty (30) days. DTSC will bear its own costs associated with public notice of
11   any new agreement or modified Consent Decree.

12        60. If, following the close of the public comment period, DTSC decides not
13   to modify the Consent Decree or withdraw its consent, DTSC shall confirm its
14   intention to proceed with the Consent Decree in a notice delivered to counsel for
15   Defendants, Murray M. Sinclair. Once issued, DTSC's notice of intent to proceed
16   with the Consent Decree will be deemed incorporated into this Consent Decree.

17        61. If the Court should decline to approve this Consent Decree in the
18   form presented, it shall be voidable at the sole discretion of any Party.

19
20   **IT IS HEREBY AGREED:**       **CALIFORNIA DEPARTMENT OF**
                                 **TOXIC SUBSTANCES CONTROL**
21
22   DATED: _3/13/23_       By:_Peter Garcia_ Digitally signed by Peter Garcia
                                Date: 2023.03.13 12:54:46 -07'00'
23
                             Branch Chief
24                           Site Mitigation and Restoration Program

25                           **MYUNG FAMILY PARTNERSHIP**
26                           **NO. 1, L.P.**

27   DATED: _12/19/2022_     By:_Jung S. Myung_
28                           Jung S. Mung

                    20          [Proposed] Consent Decree
                                     (Case No. CV-23-05054 PA (SKx)

JUNG S. MYUNG

DATED: 12/19/2022          By: _Jung S. Myung_
                               Jung S. Myung

**APPROVED AS TO FORM:**

DATED:  03/09/2023          By: _Doyle Graham_
                               Doyle Graham, Staff Attorney
                               Office of Legal Counsel

DATED: 12/19/2022          By: _____
                               Murray M. Sinclair
                               Murray M. Sinclair & Associates

**IT IS SO ORDERED, ADJUDGED, AND DECREED**

Dated:  October 23, 2023          _____
                                   United States District Judge

[Proposed] Consent Decree
(Case No. CV-23-05054 PA (SKx))